IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| De'Angelo Harrison, #330576, ) | Case No. 8:14-cv-01196-JMC-JDA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | **OF MAGISTRATE JUDGE** |
| South Carolina Department of Corrections;) | |
| Medical Staff at Allendale C.I.; Bryne Thomas) | |
| *a/k/a Thomas Byrne*; Pamelia C. Derrick; John) | |
| Solomon, PHD; Director of Medical John) | |
| Tomarching; Levern Cohen; Lieutenant S.) | |
| Watson; Chris R. Lloyd; George J. Amonitti;) | |
| Karina M. Callaway; Ella L. Simmons; and Dr.) | |
| Elkins, ) | |
| ) | |
| Defendants. ) | |

This matter is before the Court on a motion to dismiss filed by Defendants Thomas Byrne, Pamelia Derrick, John Solomon, John Tomarching, Levern Cohen ("Cohen"), S. Watson, Chris Lloyd, Ella Simmons, and Dr. Elkins (collectively, "the Initial Moving Defendants")[1] [Doc. 52] and a motion to dismiss filed by Defendant George Amonitti[2]

---

[1]The undersigned has recommended that the South Carolina Department of Corrections ("SCDC"), Medical Staff at Allendale C.I., and Karina M. Callaway be dismissed from the action in Reports and Recommendations filed on July 8, 2014, and September 10, 2014. [Docs. 39, 69.]

[2]Amonitti filed his motion to dismiss on October 1, 2014, over a month after the initial motion to dismiss was filed and after both a response and reply were filed with respect to the initial motion to dismiss. In his motion, Amonitti incorporated by reference the memorandum in support of the initial motion to dismiss. [Doc. 83 at 2.] Accordingly, Amonitti asserts the same arguments as those raised in the initial motion to which Plaintiff has responded. [Doc. 71.] Because the Court finds, as discussed below, Plaintiff has stated claims upon which relief may be granted, and Plaintiff has already responded to the arguments raised in the memorandum, the Court need not wait for the Plaintiff to file a response to Amonitti's motion. Instead, the Court addresses both motions in this Report and Recommendation. As such, all defendants who have filed motions to dismiss are referenced herein collectively as "Defendants."

("Amonitti") [Doc. 83]. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings and recommendations to the District Court.

Plaintiff, proceeding pro se, filed his Complaint on March 27, 2014, and Amended Complaint on March 31, 2014, alleging a violation of his constitutional rights pursuant to 42 U.S.C. § 1983.[3] [Docs. 1, 1-1.] The Initial Moving Defendants filed their motion to dismiss on August 18, 2014. [Doc. 52.] By Order filed the same day, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. [Doc. 53.] Plaintiff filed a response in opposition to the motion on September 15, 2014. [Doc. 71.] The Initial Moving Defendants filed their Reply to the response to the motion to dismiss on September 25, 2014. [Doc. 77.] On October 1, 2014, Amonitti filed a motion to dismiss. [Doc. 83.] Accordingly, the motion is now ripe for review.

## BACKGROUND

Plaintiff is an inmate of SCDC and is currently housed at Evans Correctional Institute; however, during the time of the alleged incidents, he was housed at Ridgeland Correctional Institute ("Ridgeland") and Allendale Correctional Institute ("Allendale"). [Doc. 1 at 2–3, 7.]

---

[3] A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court. *See Houston v. Lack*, 487 U.S. 266, 270 (1988). In this case, construing the filing date in the light most favorable to Plaintiff, his Complaint was filed on March 27, 2014, and his Amended Complaint was filed on March 31, 2014. [Docs. 1-20, 1-21 (envelope for Complaint stamped "Mar. 27, 2014" and envelope for Amended Complaint stamped March 31, 2014).]

Plaintiff claims he was attacked by three inmates on April 18, 2012. [Doc. 1 at 4.] In the attack, Plaintiff received several injuries, including a detached retina in his left eye, a broken foot, several lacerations, a compound fracture in his spine, a broken nose, and a head injury. [*Id.* at 4; Doc. 1-1 at 1.]

Plaintiff alleges that prison officials at Ridgeland knew he was in danger of attack from his fellow inmates and they were deliberately indifferent to his safety and failed to protect him. [Doc. 1 at 3.] Plaintiff asserts Defendants knew or should have known of the threat posed to him because he had been attacked three years before while an inmate at Ridgeland. [*Id.* at 3, 11.] After that incident, Plaintiff claims, he was removed from Ridgeland for his safety. [*Id.* at 3.] Additionally, Plaintiff alleges soon after he was moved back to Ridgeland, his roommate pulled a shank on him on December 25, 2011. [*Id.* at 4.] Thereafter, Plaintiff claims the administration moved him to another dorm for his safety but not another facility. [*Id.*]

After the 2012 attack, Plaintiff claims he was taken to the Coastal Hospital Emergency Room. [*Id.* at 5.] When he was released, Plaintiff was put in solitary confinement. [*Id.*] On June 25, 2012, Lieutenant Watson came to Plaintiff's cell to move him back into the general prison population. [*Id.*] Plaintiff claims he refused to move because he felt his life was still in danger. [*Id.*] Plaintiff alleges Lieutenant Watson left and came back 30 minutes later with three other officers. [*Id.*] Plaintiff contends that Lieutenant Watson told the other officers to shoot their chemical munitions at Plaintiff and they refused. [*Id.*] Then, Plaintiff alleges, Lieutenant Watson used his chemical munition on Plaintiff twice, with one shot aimed at Plaintiff's face. [*Id.* at 5–6.] At that point, Plaintiff

3

claims he came forward and asked to be put in handcuffs and taken out of the room because Lieutenant Watson "would not stop." [*Id.* at 6.] Plaintiff alleges that the force Lieutenant Watson used to move him out of his cell was excessive. [*Id.* at 11.] Plaintiff asserts that because he feared for his safety in the general population, he then claimed to be suicidal so that the would be put back in solitary confinement. [*Id.*] Plaintiff alleges he was placed on suicide watch at Ridgeland and was then moved to Allendale. [*Id.*]

Plaintiff contends the defendants at Ridgeland should have been aware of the possibility of injury after the 2012 attack and the medical staff should have monitored his left eye. [Doc. 1-1 at 1.] Because they failed to do so, Plaintiff claims he has suffered a build up of scar tissue in that eye. [*Id.*] Plaintiff also alleges that defendants at Allendale demonstrated deliberate indifference to a serious medical need by failing to properly treat the detached retina in his eye. [Doc. 1 at 6.] Plaintiff contends he was injured in the 2012 attack and Defendants forced him to wait an unreasonable amount of time for treatment. [*Id.* at 3.] When Plaintiff was moved back into the general population at Allendale, he claims he noticed changes in his vision. [*Id.* at 6.] Plaintiff asserts he signed up for sick call and filed grievances but was not seen by the medical staff. [*Id.*] As a last resort, Plaintiff alleges he cut himself and requested to be put on suicide watch in order to receive medical attention for his eye. [*Id.*] Once he was seen, Plaintiff asserts he was diagnosed with a detached retina and was referred to a retina specialist. [*Id.*] Plaintiff had three surgeries to correct the problem; however, he claims he still sees flashes of light and has permanent vision loss. [*Id.* at 7.] Further, Plaintiff claims SCDC would not pay for corrective surgery and would only pay for antiquated procedures. [*Id.*]

4

Plaintiff seeks compensatory damages as follows: $250,000 for the injury to his head; $50,000 for the injury to his foot; $5,000 for the injury to his nose; $250,000 for the injury to his eye; $5,000 for his stab wounds; and $250,000 for the injury to his spine. [Doc. 1-1 at 5.]

## APPLICABLE LAW

**Liberal Construction of Pro Se Complaint**

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting

*Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).  Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments.  This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted).  Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State

has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001).  Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)).  State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor."  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v. *Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Rule 12(b)(6) Motion to Dismiss Standard**

A motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support [his] claim and would entitle [him] to relief.  In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993).  In addition to the complaint, the court "may consider documents attached to the complaint . . . so long as they are integral to the complaint and

authentic." *Sec'y of State for Def. v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).

With respect to well-pleaded allegations, the Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . .

550 U.S. 544, 555 (2007) (internal citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." (citing *Twombly*, 550 U.S. at 556)); *E. Shore Mkts., Inc. v. J.D. Assocs., Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000) (noting that court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments"); 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

## DISCUSSION

Defendants have moved to dismiss this action, contending that Plaintiff fails to set forth facts sufficient to state a cause of action upon which relief may be granted with respect to Plaintiff's failure to protect, excessive force, and deliberate indifference to serious medical needs claims. [Doc. 52-1 at 4.] Defendants further posit that Plaintiff's deliberate indifference to serious medical needs claim does not rise to the level of cruel and unusual punishment. [*Id.* at 5.]

**Deliberate Indifference/Failure to Protect Claim**

The Eighth Amendment protects inmates from physical harm at the hands of fellow inmates resulting from "the deliberate or callous indifference of prison officials to specific known risks of such harm." *Pressly v. Hutto*, 816 F.2d 977, 979 (4th Cir. 1987) (citing *Davis v. Zahradnick*, 600 F.2d 458, 460 (4th Cir. 1979)). The United States Supreme Court and the Fourth Circuit have rejected a negligence standard in determining deliberate indifference. *See Whitley v. Albers*, 475 U.S. 312, 319 (1986); *Moore v. Winebrenner,* 927 F.2d 1312, 1315–17 (4th Cir. 1991). Thus, merely negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation. *See Whitley*, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack for due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); *see also Moore*, 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in *Whitley*). A plaintiff must allege facts to show he was exposed to a substantial risk of serious harm in that if nothing was done he was almost

9

certain to face serious injury at the hands of other inmates. *See Baze v. Rees*, 553 U.S. 35, 49–50 (2008) (noting that the Eight Amendment protects against risk of future harm that is "'*sure or very likely* to cause serious illness and needless suffering,' and give rise to 'sufficiently *imminent* dangers" (citation omitted) (emphasis in original)).

At the Rule 12(b)(6) stage, Plaintiff is not required to plead facts sufficient to prove his case; instead, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)). Here, Plaintiff sets forth facts sufficient to state a claim for relief that is plausible on its face. First, Plaintiff contends that he had been attacked at Ridgeland three years prior to the 2012 incident; therefore, Defendants should have been aware that he was at risk of another attack. [Doc. 1 at 3, 11.] Further, Plaintiff contends Defendants were aware of more recent threats to his safety. Plaintiff alleges his roommate pulled a shank on him on December 25, 2011, and that, as a result, he was moved out of the dorm. [*Id.* at 4.] Finally, Plaintiff notified prison officials that he was concerned about his future safety at Ridgeland. [*Id.*] Accordingly, the Court recommends that Defendants' motions to dismiss be denied with respect to the failure to protect claim.

**Excessive Force Claim**

The use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive force claim, an inmate must show (1) that the correctional officers acted with a sufficiently culpable state of mind and (2) that

the harm inflicted on the inmate was sufficiently serious. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component requires the inmate to demonstrate the officer applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6–7. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."[4] *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). The objective component of an excessive force claim is not nearly as demanding to establish because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id.* at 9 (internal citation omitted). However,

> not every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (internal citations and quotation marks omitted).

Defendants assert Plaintiff did not plead facts sufficient to state a cause of action for excessive force. [Doc. 52-1 at 4.] The Court disagrees. Here, Plaintiff contends that

---

[4]In evaluating whether the use of force was wanton or unnecessary, the Court considers (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

11

he told Lieutenant Watson he did not want to move back into the general population because he feared for his life. [Doc. 1 at 5.] In response, Lieutenant Watson asked the other officers present at the incident to use their chemical munitions on Plaintiff, which they refused to do. [*Id.*] Plaintiff then alleges that Lieutenant Watson sprayed chemicals into his cell twice, including once in Plaintiff's face. [*Id.*] These facts, if true, give rise to a federal cause of action. Accordingly, Defendants' motions to dismiss should be denied with respect to this claim.

**Deliberate Indifference to Medical Needs Claim**

In addition to arguing Plaintiff fails to set forth facts sufficient to state a claim upon which relief may be granted, Defendants further argue their actions did not rise to the level of cruel and unusual punishment or deliberate indifference. [[Doc. 52-1 at 4–5.] The Court disagrees.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth Amendment and states a cause of action under § 1983 because deliberate indifference constitutes "the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104–05 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)). Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk. *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the

defendant's position." (citation omitted)).  Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights.  *Miltier*, 896 F.2d at 851.  Moreover, the Fourth Circuit has held that deliberate indifference based on serious medical needs of prisoners can be shown by prison doctors in their response to a prisoner's needs or by prison guards in intentionally delaying access to medical care.  *See Smith v. Smith*, 589 F.3d 736, 738–39 (4th Cir. 2009) (finding that, taking the plaintiff's allegations as true, he alleged sufficient facts to constitute intentional denial of treatment because delay can be a violation of the Eighth Amendment); *Abraham v. McDonald*, 493 F. App'x 465 (4th Cir. 2012) (a delay in treatment may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain).

Taking Plaintiff's allegations as true and in the light most favorable to him, as the Court must for Rule 12(b)(6) motions, Plaintiff sets forth facts sufficient to state a claim to relief that is plausible on its face.  He alleges that, after he was attacked in 2012, Defendants unreasonably delayed medical treatment for his detached retina by refusing to treat his eye and delaying his appointment to see a specialist.  [Doc. 1 at 3, 6.]  He contends that he has suffered permanent vision loss as a result.  [*Id.* at 7.]  Plaintiff further alleges that Defendants refused to allow him to have corrective surgery.  [*Id.*]  These allegations are sufficient to state a claim that these Defendants were deliberately indifferent to Plaintiff's medical needs.  Accordingly, the Court recommends that Defendants' motions to dismiss be denied with respect to Plaintiff's deliberate indifference to medical needs claim.

13

**Qualified Immunity**

Defendants argue Lieutenant Watson and Cohen are entitled to qualified immunity. [Doc. 52-1 at 6– 8.] The Court disagrees.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  Thus, qualified immunity does not protect an official who violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right.  *Id.*  Further, qualified immunity is "an immunity from suit rather than a mere defense to liability."  *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

To determine whether qualified immunity applies, a court must determine "'whether the plaintiff has alleged the deprivation of an actual constitutional right at all[ ] and ... whether that right was clearly established at the time of the alleged violation.'"  *Wilson v. Layne*, 526 U.S. 603, 609 (1999) (quoting *Conn v. Gabbert*, 526 U.S. 286, 290 (1999)). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[,] assessed in light of the legal rules that were 'clearly established' at the time it was taken."  *Anderson v. Creighton*, 483 U.S. 635, 639 (1987) (citing *Harlow*, 457 U.S. at 819).  For purposes of this analysis, a right is "clearly established" if "[t]he contours of

the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 640.

District court and court of appeals judges are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). If a court decides in the negative the first prong it considers—i.e., the court decides the plaintiff has not alleged the deprivation of an actual constitutional right or the right was not clearly established at the time of the alleged violation—the court need not consider the other prong of the qualified immunity analysis. *See id.* at 243–45; *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (holding the court "need not formally resolve" the constitutional question of "whether the [plaintiffs] were arrested without probable cause" to address the plaintiffs' § 1983 claim; the court stated that it "need only determine whether [the defendant]—a deputy sheriff performing within the normal course of his employment—acted with the objective reasonableness necessary to entitle him to qualified immunity").

Plaintiff asserts an excessive force claims against Lieutenant Watson and a failure to protect claim against Cohen. [Doc. 1 at 4– 5.] A prison officer's use of excessive force and failure to protect an inmate may give rise to liability for a constitutional violation. *See Hudson*, 503 U.S. at 5 (1992) (stating the use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment);*Pressly*, 816 F.2d at 979 (holding the Eighth Amendment protects inmates from physical harm at the hands of fellow inmates resulting from the deliberate or callous

indifference of prison officials to specific known risks of such harm (internal quotation marks omitted) (internal citation omitted)).

Plaintiff alleges Lieutenant Watson used excessive force when he used chemical munitions. The Fourth Circuit Court of Appeals has held that the use of mace or pepper spray is not a per se violation of a prisoner's constitutional rights but it must be used appropriately. *Williams*, 77 F.3d at 763. It has further stated that

> mace can be constitutionally used in small quantities to "prevent riots and escapes" or to control a "recalcitrant inmate." A limited application of mace may be "much more humane and effective than a flesh to flesh confrontation with an inmate." Moreover, prompt washing of the maced area of the body will usually provide immediate relief from pain.

*Id.* (internal citations omitted). However, "it is necessary to examine the 'totality of the circumstances, including the provocation, the amount of gas used, and the purpose for which the gas is used [to] determin[e] the validity of the use of tear gas in the prison environment.'" *Id.* (quoting *Bailey v. Turner*, 736 F.2d 963, 969 (4th Cir. 1984) (alterations in *Williams)*). These weapons posses "inherently dangerous characteristics capable of causing serious and perhaps irreparable injury to the victim." *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984).

Plaintiff asserts Lieutenant Watson sprayed Plaintiff with chemical munitions twice when he refused to move out of his cell because he feared for his safety. [Doc. 1 at 5–6.] Beyond a conclusory argument that Lieutenant Watson is allowed discretion in keeping prisoners under control at all times, Defendants failed to provide any basis in law or fact for the Court to determine Lieutenant Watson is entitled to qualified immunity. [Doc. 52-1 at 7.] Without more information regarding the amount of force applied and the

circumstances surrounding Lieutenant Watson's decision to use force, the Court cannot determine whether Lieutenant Watson violated a clearly established constitutional right of which a reasonable officer would have known. Therefore, Lieutenant Watson is not entitled to qualified immunity.

Plaintiff asserts Cohen, as the Warden of Ridgeland, failed to protect Plaintiff from attack by his fellow inmates. He maintains he alerted the prison officials of the danger to his well-being, and even though they moved him to another dormitory, they failed to remove him from Ridgeland. [Doc. 1 at 4– 5.] As to whether Cohen is entitled to qualified immunity, the Court again lacks sufficient information to make this conclusion. Defendants contend that Cohen acted reasonably in protecting Plaintiff in that Plaintiff was moved to a new dormitory after an altercation with his roommate and was removed from Ridgeland after the 2012 attack. [Doc. 52-1 at 8.] However, Defendants offer no factual support for their argument regarding Cohen's knowledge of the threat against Plaintiff or any legal basis for determining the reasonableness of Cohen's actions. Accordingly, Cohen is not entitled to qualified immunity at this stage of the proceedings.[5]

## **CONCLUSION AND RECOMMENDATION**

Wherefore, based upon the foregoing, the Court recommends that the Initial Moving Defendants' motion to dismiss be DENIED and Amonitti's motion to dismiss be DENIED.

---

[5]If the facts and evidence produced through discovery fail to support a claim for excessive force against Lieutenant Watson or failure to protect against Cohen, they may file a properly supported Rule 56 motion for summary judgment at that time.

IT IS SO RECOMMENDED.

                s/Jacquelyn D. Austin
                United States Magistrate Judge

October 6, 2014
Greenville, South Carolina