IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

De'Angelo Harrison, #330576,          )        Case No. 8:14-cv-01196-JMC-JDA
                                      )
                    Plaintiff,        )
                                      )
v.                                    )        **REPORT AND RECOMMENDATION**
                                      )        **OF MAGISTRATE JUDGE**
South Carolina Department of Corrections;)
Medical Staff at Allendale C.I.; Bryne Thomas)
*a/k/a Thomas Byrne*; Pamela C. Derrick; John)
Solomon, PHD; Director of Medical John)
Tomarching; Levern Cohen; Lieutenant S.)
Watson; Chris R. Lloyd; George J. Amonitti;)
Karina M. Callaway; Ella L. Simmons; and Dr.)
Elkins,                               )
                                      )
                    Defendants.       )
_____

        This matter is before the Court on a motion for summary judgment filed by

Defendants Thomas Byrne, Pamelia Derrick, John Solomon, John Tomarching, Levern

Cohen, Lieutenant S. Watson, Chris Lloyd, Ella Simmons, George J. Amonitti, and Dr.

Elkins (collectively, "Defendants").[1]  [Doc. 102.]  Pursuant to the provisions of 28 U.S.C. §

636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d), D.S.C., this magistrate judge is authorized

to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and to submit findings

and recommendations to the District Court.

        Plaintiff, proceeding pro se, filed his Complaint on March 27, 2014, and Amended

Complaint on March 31, 2014, alleging a violation of his constitutional rights pursuant to

_____

        [1]The undersigned has recommended that the South Carolina Department of
Corrections ("SCDC"), Medical Staff at Allendale C.I., and Karina M. Callaway be dismissed
from the action in Reports and Recommendations filed on July 8, 2014, and September 10,
2014.  [Docs. 39, 69.]

42 U.S.C. § 1983.[2]  [Docs. 1, 1-1.]  Defendants filed their motion for summary judgment on January 19, 2015.  [Doc. 102.]  By Order filed January 21, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the dismissal/summary judgment procedure and the possible consequences if he failed to adequately respond to the motion.  [Doc. 104.]  Plaintiff filed a response in opposition to the motion on February 18, 2015 [Doc. 106] and filed additional attachments on April 3, 2015 [Doc. 108].  Accordingly, the motion is now ripe for review.

## BACKGROUND

Plaintiff is an inmate of SCDC and is currently housed at Evans Correctional Institute; however, during the time of the alleged incidents, he was housed at Ridgeland Correctional Institute ("Ridgeland") and Allendale Correctional Institute ("Allendale").  [Doc. 1 at 2– 3, 7.]  Plaintiff claims he was attacked by three inmates on April 18, 2012.  [Doc. 1 at 4.]  In the attack, Plaintiff received several injuries, including a detached retina in his left eye, a broken foot, several lacerations, a compound fracture in his spine, a broken nose, and a head injury.  [*Id.* at 4; Doc. 1-1 at 1.]

Plaintiff alleges that prison officials at Ridgeland knew he was in danger of attack from his fellow inmates and they were deliberately indifferent to his safety and failed to protect him.  [Doc. 1 at 3.]  Plaintiff asserts Defendants knew or should have known of the threat posed to him because he had been attacked three years before while an inmate at

---

[2]A prisoner's pleading is considered filed at the moment it is delivered to prison authorities for forwarding to the court.  *See Houston v. Lack*, 487 U.S. 266, 270 (1988).  In this case, construing the filing date in the light most favorable to Plaintiff, his Complaint was filed on March 27, 2014, and his Amended Complaint was filed on March 31, 2014. [Docs. 1-20, 1-21 (envelope for Complaint stamped Mar. 27, 2014 and envelope for Amended Complaint stamped March 31, 2014).]

Ridgeland.  [*Id.* at 3, 11.]   After that incident, Plaintiff claims, he was removed from Ridgeland for his safety.  [*Id.* at 3.]  Additionally, Plaintiff alleges soon after he was moved back to Ridgeland, his roommate pulled a shank on him on December 25, 2011.  [*Id.* at 4.] Thereafter, Plaintiff claims the administration moved him to another dorm for his safety but not another facility.  [*Id.*]

After the 2012 attack, Plaintiff claims he was taken to the Coastal Hospital Emergency Room ("Coastal ER").  [*Id.* at 5.]  When he was released, Plaintiff was put in solitary confinement.  [*Id.*]  On June 25, 2012, Lieutenant Watson came to Plaintiff's cell to move him back into the general prison population.  [*Id.*]  Plaintiff claims he refused to move because he felt his life was still in danger.  [*Id.*]  Plaintiff alleges Lieutenant Watson left and came back 30 minutes later with three other officers.  [*Id.*]  Plaintiff contends that Lieutenant Watson told the other officers to shoot their chemical munitions at Plaintiff and they refused. [*Id.*]   Then, Plaintiff alleges, Lieutenant Watson used his chemical munition on Plaintiff twice, with one shot aimed at Plaintiff's face.  [*Id.* at 5–6.]   At that point, Plaintiff claims he came forward and asked to be put in handcuffs and taken out of the room because Lieutenant Watson "would not stop."  [*Id.* at 6.]  Plaintiff alleges that the force Lieutenant Watson used to move him out of his cell was excessive.  [*Id.* at 11.]  Plaintiff asserts that because he feared for his safety in the general population, he then claimed to be suicidal so that the would be put back in solitary confinement.  [*Id.*]  Plaintiff alleges he was placed on suicide watch at Ridgeland and was then moved to Allendale.  [*Id.*]

Plaintiff contends the defendants at Ridgeland should have been aware of the possibility of injury after the 2012 attack and the medical staff should have monitored his left eye.  [Doc. 1-1 at 1.]  Because they failed to do so, Plaintiff claims he has suffered a build

3

up of scar tissue in that eye. [*Id.*] Plaintiff also alleges that defendants at Allendale demonstrated deliberate indifference to a serious medical need by failing to properly treat the detached retina in his eye. [Doc. 1 at 6.] Plaintiff contends he was injured in the 2012 attack and Defendants forced him to wait an unreasonable amount of time for treatment. [*Id.* at 3.] When Plaintiff was moved back into the general population at Allendale, he claims he noticed changes in his vision. [*Id.* at 6.] Plaintiff asserts he signed up for sick call and filed grievances but was not seen by the medical staff. [*Id.*] As a last resort, Plaintiff alleges he cut himself and requested to be put on suicide watch in order to receive medical attention for his eye. [*Id.*] Once he was seen, Plaintiff asserts he was diagnosed with a detached retina and was referred to a retina specialist. [*Id.*] Plaintiff had three surgeries to correct the problem; however, he claims he still sees flashes of light and has permanent vision loss. [*Id.* at 7.] Further, Plaintiff claims SCDC would not pay for corrective surgery and would only pay for antiquated procedures. [*Id.*]

Plaintiff seeks compensatory damages as follows: $250,000 for the injury to his head; $50,000 for the injury to his foot; $5,000 for the injury to his nose; $250,000 for the injury to his eye; $5,000 for his stab wounds; and $250,000 for the injury to his spine. [Doc. 1-1 at 5.]

## APPLICABLE LAW

### Liberal Construction of Pro Se Complaint

Plaintiff brought this action pro se, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Pro se pleadings are held to a less stringent standard

4

than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction means only that if the Court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so. *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999). A court may not construct the plaintiff's legal arguments for him. *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993). Nor should a court "conjure up questions never squarely presented." *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

**Requirements for a Cause of Action Under § 1983**

This action is filed pursuant to 42 U.S.C. § 1983, which provides a private cause of action for constitutional violations by persons acting under color of state law. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Accordingly, a civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999).

Section 1983 provides, in relevant part,

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983. To establish a claim under § 1983, a plaintiff must prove two elements: (1) that the defendant "deprived [the plaintiff] of a right secured by the Constitution and laws of the United States" and (2) that the defendant "deprived [the plaintiff] of this constitutional

5

right under color of [State] statute, ordinance, regulation, custom, or usage." *Mentavlos v. Anderson*, 249 F.3d 301, 310 (4th Cir. 2001) (third alteration in original) (citation and internal quotation marks omitted).

The under-color-of-state-law element, which is equivalent to the "state action" requirement under the Fourteenth Amendment,

> reflects judicial recognition of the fact that most rights secured by the Constitution are protected only against infringement by governments. This fundamental limitation on the scope of constitutional guarantees preserves an area of individual freedom by limiting the reach of federal law and avoids imposing on the State, its agencies or officials, responsibility for conduct for which they cannot fairly be blamed.

*Id.* (quoting *Dowe v. Total Action Against Poverty in Roanoke Valley,* 145 F.3d 653, 658 (4th Cir. 1998)) (internal citations and quotation marks omitted). Nevertheless, "the deed of an ostensibly private organization or individual" may at times be treated "as if a State has caused it to be performed." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 295 (2001). Specifically, "state action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of the State itself.'" *Id.* (quoting *Jackson v. Metro. Edison Co.*, 419 U.S. 345, 351 (1974)). State action requires both an alleged constitutional deprivation "caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State . . . or by a person for whom the State is responsible" and that "the party charged with the deprivation [is] a person who may fairly be said to be a state actor." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982). A determination of whether a private party's allegedly unconstitutional conduct is fairly attributable to the State requires the court to "begin[ ] by identifying 'the specific conduct of which the plaintiff

complains.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 51 (1999) (quoting *Blum* v.

*Yaretsky*, 457 U.S. 991, 1004 (1982)).

**Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure states, as to a party who has moved

for summary judgment:

> The court shall grant summary judgment if the movant shows
> that there is no genuine dispute as to any material fact and the
> movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(a).  A fact is "material" if proof of its existence or non-existence would

affect disposition of the case under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986).  An issue of material fact is "genuine" if the evidence offered is such

that a reasonable jury might return a verdict for the non-movant.  *Id.* at 257.  When

determining whether a genuine issue has been raised, the court must construe all

inferences and ambiguities against the movant and in favor of the non-moving party.

*United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating

to the court that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986).  Once the movant has made this threshold demonstration, the

non-moving party, to survive the motion for summary judgment, may not rest on the

allegations averred in his pleadings.  *Id.* at 324.  Rather, the non-moving party must

demonstrate specific, material facts exist that give rise to a genuine issue.  *Id.*  Under this

standard, the existence of a mere scintilla of evidence in support of the non-movant's

position is insufficient to withstand the summary judgment motion.  *Anderson*, 477 U.S. at

252.  Likewise, conclusory allegations or denials, without more, are insufficient to preclude

granting the summary judgment motion.  *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Anderson*, 477 U.S. at 248.  Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> > (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> >
> > (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  Accordingly, when Rule 56© has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

## DISCUSSION

Defendants argue that Plaintiff has failed to exhaust administrative remedies with respect to his failure to protect and excessive force claims.  [Doc. 102-1 at 5–7.] Defendants further assert that there is no genuine issue of material fact regarding Plaintiff's failure to protect, excessive force, and deliberate indifference to serious medical needs claims.  [*Id.* at 7–20.]  The Court will address each argument in turn.

8

**Exhaustion of Administrative Remedies**

Section 1997e(a) of the PLRA provides that "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). As the United States Supreme Court observed:

> Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case. In some instances, corrective action taken in response to an inmate's grievance might improve prison administration and satisfy the inmate, thereby obviating the need for litigation. In other instances, the internal review might filter out some frivolous claims. And for cases ultimately brought to court, adjudication could be facilitated by an administrative record that clarifies the contours of the controversy.

*Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (internal citations and quotations omitted). Consequently, the PLRA's exhaustion requirement is mandatory and "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.* at 524, 532. The exhaustion requirement applies even if the relief sought in the civil action is not available in the administrative proceedings. *See Booth v. Churner*, 532 U.S. 731, 741 (2001).

Exhaustion is defined by each prison's grievance procedure, not the PLRA; a prisoner must comply with his prison's grievance procedure to exhaust his administrative remedies. *Jones v. Bock*, 549 U.S. 199, 218 (2007). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford*

*v. Ngo*, 548 U.S. 81, 90 (2006).  An inmate's failure to "properly take each step within the administrative process . . . bars, and does not just postpone, suit under § 1983." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002); *see also White v. McGinnis*, 131 F.3d 593, 595 (6th Cir. 1997) (upholding dismissal of an inmate's complaint because the inmate failed to proceed beyond the first step in the administrative grievance process); *but see, Jones*, 549 U.S. at 219–24 (rejecting "total exhaustion rule" and holding that when presented with a complaint containing exhausted and unexhausted claims, courts should "proceed[] with the good and leave[] the bad").  Courts within the District of South Carolina have found an inmate exhausts his administrative remedies when he completes all steps of a prison's grievance procedure, and § 1997e(a) does not require inmates to further appeal to South Carolina's Administrative Law Court.  *See, e.g.*, *Ayre v. Currie*, No. 05-3410, 2007 WL 3232177, at *7 n.5 (D.S.C. Oct. 31, 2007);  *Charles v. Ozmint*, No. 05-2187, 2006 WL 1341267, at *4 (D.S.C. May 15, 2006).  Exhaustion is a prerequisite to suit that must be completed prior to filing an action.  *Anderson v. XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 677 (4th Cir. 2005).

Exhaustion is an affirmative defense; an inmate is not required to plead exhaustion in his complaint.  *Jones*, 549 U.S. at 211–12; *Anderson*, 407 F.3d at 681.  However, to survive a motion for summary judgment asserting he failed to exhaust, the inmate is required to produce evidence in response to the motion that refutes the claim that he failed to exhaust.  *See Hill v. Haynes*, 380 F. App'x 268, 270 (4th Cir. 2010) (unpublished opinion) (holding that "to withstand a motion for summary judgment, the non-moving party must produce competent evidence sufficient to reveal the existence of a genuine issue of material fact for trial" (citing Fed. R. Civ. P. 56(e)(2))); *see also Celotex*, 477 U.S. at 323–24

(stating that once the party seeking summary judgment demonstrates there is no genuine issue of material fact, the non-moving party, to survive the motion for summary judgment, must demonstrate specific, material facts exist that give rise to a genuine issue).

The Court may take judicial notice of the SCDC grievance process, specifically, SCDC Policy GA–01.12.  In *Jones v. Kay*, 2007 WL 4292416, at *5 (D.S.C. Dec. 5, 2007), the court summarized the parameters of this policy as follows:

(1)     an inmate must fill out a Form 10–5 (Step 1 Grievance) to explain his complaint and give the form to an employee designated by the Warden within fifteen (15) days of the alleged incident;

(2)     the Warden designee has nine (9) working days from the time the grievance is presented to put it into SCDC's automated system;

(3)     the Warden should respond to the grievant in writing within forty (40) days;

(4)     the inmate may appeal by completing a Form 10–5a (Step 2 Appeal) and submitting it to the Inmate Grievance Coordinator within five (5) calendar days of receipt of the response; and

(5)     a responsible SCDC official will have sixty (60) days to respond to the Step 2 Grievance plus five (5) days for the grievant to be served.

*See* SCDC Policy GA–01.12 (Inmate Grievance System). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. *Id.*

### Exhaustion of Excessive Force Claim

With respect to Plaintiff's excessive force claim, the Court finds Plaintiff exhausted his administrative remedies.  Plaintiff filed a Step 1 grievance on August 19, 2012, in which he states that he was "gassed twice then led out of my cell . . . ." [Doc. 1-6 at 1.]  The Warden responded to his grievance on August 7, 2012, stating that Plaintiff's grievance had been investigated and he had been transferred.  [*Id.* at 2.]  Plaintiff then filed a Step 2

11

grievance, asserting that he "was sprayed with 140 grams of gas" because he told the officers that he feared for his life and that he felt he was subjected to cruel and unusual punishment; on February 25, 2014, a prison official responded that Plaintiff's claims had been investigated and his grievance was denied. [Doc. 1-7.] Accordingly, Plaintiff has completed all the necessary steps for exhaustion and Defendants, were given sufficient notice of Plaintiff's claim of excessive force.

### Exhaustion of Failure to Protect Claim

Regarding Plaintiff's failure to protect claim, the Court finds Plaintiff has not exhausted his administrative remedies.[3] Plaintiff filed numerous grievances but only three reference the 2012 attack. In his Step 1 grievance dated October 9, 2012, Plaintiff complained that he needed medical treatment or surgery for his eye as a result of injuries sustained in the 2012 attack. [Doc. 1-8 at 3.] The warden responded on October 15, 2012, that Plaintiff had been approved to see an ophthalmologist and placed on a waiting list. [*Id.* at 4.] Plaintiff filed another Step 1 grievance on June 29, 2012, stating that he was requesting attention for his life-threatening situation. [Doc. 1-6 at 1.] The Warden's

---

[3]Defendants' argument that Plaintiff must have exhausted his administrative remedies with respect to his failure to protect claim before he was attacked by his fellow inmates is without merit. As an initial matter, a failure to protect claim is not required to be exhausted before a plaintiff is attacked. *See Hartry v. Cnty. of Suffolk*, 755 F. Supp. 2d 422, 430 (E.D.N.Y. December 5, 2010) (holding that a plaintiff was not required to file a grievance before he was attacked to maintain a failure to protect claim because "[t]he actual 'act or occurrence' that gave rise to the instant cause of action is the October 24th Attack, and therefore the [p]laintiff had five days after the October 24th Attack to file a grievance against . . . any . . . officer for failing to protect him") Further, Defendants argue that Plaintiff's claim must have been exhausted before he was attacked to demonstrate that Defendants had notice of the threats against Plaintiff. This argument addresses the merits of Plaintiff's failure to protect claim and not whether Plaintiff exhausted his administrative remedies.

response, dated August 7, 2012, stated that Plaintiff had been placed in pre-hearing

detention until the need for protective custody had been substantiated and Plaintiff had

since been moved to Allendale. [*Id.* at 2.] Plaintiff filed a Step 2 grievance on August 19,

2012, appealing the June 29 Step 1 grievance and stating that he had been attacked on

April 18 but the Warden had still tried to put Plaintiff back in the general population. [Doc.

1-7 at 1.] The response, dated February 25, 2014, stated that Plaintiff's concerns had been

investigated and it had been determined that no further action was warranted. [*Id.*]

It appears that Plaintiff exhausted the claims submitted in these grievances. Nothing

in the grievances, however, indicates or even suggests that Plaintiff was complaining that

prison officials or staff failed to protect him from the 2012 attack or that he was seeking

relief based on failure to protect.[4]    Accordingly, summary judgment is appropriate with

respect to Plaintiff's failure to protect claim.[5]

_____

[4]It appears that in his response in opposition to the motion for summary judgment, Plaintiff attempts to assert that Defendants failed to protect him after the 2012 attack by trying to move him back into the general population. [Doc. 106 at 4.] However, the Complaint and Amended Complaint are devoid of any reference to this claim. [*See*, Docs 1, 1-1.] Thus, the claim is not a part of the instant case and will not be addressed further.

[5]Plaintiff's failure to protect from the 2012 attack claim also fails on the merits. To succeed on his failure to protect claim, a plaintiff must show that the defendants were aware, prior to the incident, of the substantial risk of harm posed to the plaintiff. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994) (holding that a prison official is not liable for deliberate indifference if he or she "did not know of the underlying facts indicating a sufficiently substantial danger"). Nothing in the record supports even an inference that Defendants were aware of any such risk.

Plaintiff alleges that he had been transferred out of Ridgeland three years before the 2012 attack because he had been threatened by gangs; and when he returned to Ridgeland, he was still in danger because he was placed in a dorm room with Charleston area gang members who were "aware of the situation that . . . happened three years ago." [Doc. 1 at 3.] Plaintiff does not allege that the same prisoners or circumstances were present in the 2012 attack and his altercation three years prior. Plaintiff's conclusory statement that Defendants were aware that he was in danger because he had some

**Excessive Force Claim**

Plaintiff alleges that Lieutenant Watson used excessive force when he sprayed Plaintiff twice with chemical munitions after Plaintiff explained that he was afraid to go back into the general population. [Doc. 1 at 5–6.] Defendants argue that Lieutenant Watson used force to gain Plaintiff's compliance and restore order and that if he had entered the cell to gain compliance, there was more potential for harm to both Lieutenant Watson and Plaintiff. [Doc. 102-1 at 11.] Defendants contend that Lieutenant Watson's use of force was applied in a good faith effort to gain compliance and that he used the minimal force necessary in the situation. [*Id.* at 11–12.] Moreover, Defendants assert Plaintiff was seen by medical personnel after he was sprayed with chemical munitions, and there is no evidence that he suffered any significant injuries. [*Id.* at 12.] The Court agrees that there is no genuine issue of material fact with respect to this claim.

The use of excessive force upon an inmate by correctional officers violates the Eighth Amendment's prohibition against cruel and unusual punishment. *Hudson v. McMillian*, 503 U.S. 1, 5 (1992). To state an excessive force claim, an inmate must show

---

difficulty at Ridgeland three years before he was attacked, without more, is insufficient to preclude granting the summary judgment motion. *See Ross*, 759 F.2d at 365.

Plaintiff further alleges that his roommate pulled a shank on him and he was moved to another dorm but not a different prison. [Doc. 1 at 4.] In an affidavit, Defendant LeVern Cohen ("Cohen"), the warden at Ridgeland, avers that he was notified in December 2011 that Plaintiff had been threatened by another inmate. [Doc. 102-17 ¶ 6.] He states that he directed Plaintiff to be moved from Beaufort Cell to Savannah Cell. [*Id.*] Cohen maintains that he was not notified of a threat against Plaintiff in the Savannah dorm and had no actual knowledge of any danger to him. [*Id.* ¶ 7.] He avers that he believed Plaintiff would be safe in the Savannah dorm and directed that he be transferred to Allendale to ensure his safety. [*Id.* ¶¶ 8, 12.] Plaintiff has failed to provide sufficient evidence that Defendants were aware of any danger to him, and, accordingly, summary judgment is appropriate with respect to this claim.

14

(1) that the correctional officers acted with a sufficiently culpable state of mind and (2) that the harm inflicted on the inmate was sufficiently serious. *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). The subjective component requires the inmate to demonstrate the officer applied force not "in a good faith effort to maintain or restore discipline," but rather applied force "maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6–7. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause."[6] *Wilson v. Seiter*, 501 U.S. 294, 299 (1991). The objective component of an excessive force claim is not nearly as demanding to establish because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . whether or not significant injury is evident." *Id.* at 9 (internal citation omitted). However,

> not every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Wilkins v. Gaddy*, 559 U.S. 34, 37–38 (2010) (internal citations and quotation marks omitted).

---

[6]In evaluating whether the use of force was wanton or unnecessary, the Court considers (1) the need for the application of force, (2) the relationship between the need and the amount of force used, (3) the threat reasonably perceived by the officials, and (4) any efforts made to temper the severity of a forceful response. *Hudson*, 503 U.S. at 7.

The extent of injury may provide some indication of the amount of force applied. *Wilkins*, 559 U.S. at 37. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id.* Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Id.*

Although Plaintiff and Defendants assert different facts surrounding the incident that could create a genuine issue of material fact regarding Lieutenant Watson's state of mind under the subjective component, Plaintiff's excessive force claim fails under the objective component. Based on the Court's review of the record, Plaintiff fails to allege any injury at all. Plaintiff has provided the following allegations and evidence in support of his excessive force claim:

- In his Complaint and Amended Complaint, Plaintiff alleges that Lieutenant Watson told him to pack his things and, when Plaintiff refused, Lieutenant Watson sprayed him with chemical munitions twice. [Doc. 1 at 5–6.] Plaintiff contends that he then came forward to be handcuffed because Lieutenant Watson "would not stop." [*Id.* at 6.]

- In his response in opposition to the motion for summary judgment, Plaintiff again alleges that Lieutenant Watson sprayed him twice with chemical munitions. [Doc. 106 at 4.]

- Plaintiff provides the statement of Jimi D. Parker ("Parker") who asserts that he was in the cell next to Plaintiff during the altercation with Lieutenant Watson. [Doc. 108-1 at 1–2.] Parker further states that he watched

16

Lieutenant Watson continue to spray Plaintiff until he came to the door to be handcuffed.  [*Id.*]

- Plaintiff's medical records from the day he was sprayed with the chemical munitions provide that Plaintiff refused medical treatment and refused to sign a refusal.  [Docs. 102-6, 106-1 at 7.]

- Plaintiff provides evidence and states multiple times throughout his pleadings that he was seen by medical staff after he was sprayed with chemical munitions.  [*E.g.* Docs. 1 at 6; 1-4 at 5; 1-5 at 1; 1-6 at 1; 106 at 4.]

-  In Plaintiff's Step I grievance pertaining to this event, Plaintiff states that Lieutenant Watson told him to pack his belongings and Plaintiff responded that he would be in danger if he were placed back in the general population.  [Doc. 1-6 at 1.]  Plaintiff states that he was gassed twice and then led out of his cell.  [*Id.*]

- In his Step 2 grievance, Plaintiff contends that he was sprayed with 140 grams[7] of gas because he told officers that he feared for his life which directly violates his Eight Amendment rights.  [Doc. 1-7 at 1.]

Plaintiff simply does not allege at any point that he received an injury as a result of the chemical munitions deployed against him.

Because Plaintiff alleges no injuries, "no reasonable jury could find that the force used against [him] was more than 'nontrivial' or 'de minimis.'" *Brown v.* Powell, 2014 WL

---

[7]Here, Plaintiff alleges that 140 grams of chemical munition were used on him; however, he provides no evidence to support his allegation beyond his own conclusory statement.

17

691662, at * 5, No. 4:12-cv-3057-DCN (D.S.C. Feb. 21, 2014); *see also Rutledge v. Porter*,

2013 WL 2285936, No. 4:11-cv-272-MGL(D.S.C. May 23, 2013) (finding that there was no

genuine issue of material fact as to whether constitutionally excessive force was used

against the plaintiff because he failed to allege any injury); *Robinson v. Marquart*, 2014 WL

4536652, C/A No. 5:13-01899-JMC (finding that a plaintiff failed to establish the objective

component of an excessive force claim where he alleged no injury); *Vicks v. Knight*, 380

F. App'x 847, 852 (11th Cir. 2010) (holding that because a "reasonable factfinder could not

believe that [the plaintiff] suffered any injury," it therefore "could not reasonably infer that

[the defendant] used anything more than a de minimis amount of force"); *compare*

*Thompson v. Shelton*, 541 F. App'x 247, 250 (4th Cir. Sept. 23, 2013) (unpublished)

(vacating district court's grant of summary judgment where plaintiff alleged various injuries

that were "supported at least in part" by medical records).  Accordingly, Plaintiff  is unable

to sustain a claim for excessive force and summary judgment is appropriate.

**Deliberate Indifference to Serious Medical Needs Claim**

Plaintiff argues that the medical staffs at Ridgeland and Allendale were deliberately

indifferent to his serious medical need and, as a result, he has suffered permanent damage

and loss of vision in his eye.  [Docs. 1 at 6–8; 1-1 at 1.]  Defendants contend that there is

no evidence to support Plaintiff's claim of deliberate indifference to a serious medical need.

[Doc. 102-1 at 12–20.]  The Court agrees Defendants are entitled to summary judgment

with respect to Plaintiff's deliberate indifference to medical needs claim.

Deliberate indifference to a prisoner's serious medical needs violates the Eighth

Amendment and states a cause of action under § 1983 because deliberate indifference

constitutes "the 'unnecessary and wanton infliction of pain.'"  *Estelle*, 429 U.S. at 104–05

(quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion of Stewart, Powell, and Stevens, JJ.)).  Deliberate indifference exists when prison officials know of a substantial risk to a prisoner's health or safety and consciously disregard that risk.  *See Farmer v. Brennan*, 511 U.S. 825, 836 (1994); *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990) ("Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." (citation omitted)).  Within the United States Court of Appeals for the Fourth Circuit, "the treatment must be so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" to violate a prisoner's Eighth Amendment rights.  *Miltier*, 896 F.2d at 851.

To prevail on an Eighth Amendment claim, the prisoner must demonstrate (1) his medical condition was a sufficiently serious one[8] and (2) subjectively, the prison officials acted with a sufficiently culpable state of mind, which is satisfied by showing deliberate indifference by the prison officials.  *Goodman v. Wexford Health Sources, Inc.*, No. 09-6996, 2011 WL 1594915, at *1 (4th Cir. Apr. 28, 2011) (quoting *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998)).  As the United States Supreme Court has explained,

> Since, we said, only the "'unnecessary *and wanton* infliction of pain'" implicates the Eighth Amendment, a prisoner advancing such a claim must, at a minimum, allege "deliberate

---

[8]"A medical need is 'serious' if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Gaudreault v. Municipality of Salem, Mass.*, 923 F.2d 203, 208 (1st Cir. 1990) (citing *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987); *Hendrix v. Faulkner*, 525 F. Supp. 435, 454 (N.D. Ind.1981)).

> indifference" to his "serious" medical needs.  "It is *only* such indifference" that can violate the Eighth Amendment; allegations of "inadvertent failure to provide adequate medical care," or of a "negligent . . . diagnos[is]," simply fail to establish the requisite culpable state of mind.

*Wilson v. Seiter*, 501 U.S. 294, 297 (1991) (emphasis and alteration in original) (citations omitted).  Further, in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment.  *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) (citing *Layne v. Vinzant*, 657 F.2d 468, 471 (1st Cir. 1981)); *see Russell v. Sheffer*, 528 F.2d 318, 318 (4th Cir. 1975) (citing *Blanks v. Cunningham*, 409 F.2d 220 (4th Cir.1969); *Hirons v. Director*, 351 F.2d 613 (4th Cir.1965)) ("Prisoners are entitled to reasonable medical care."); *see also, e.g.*, *Barton v. Dorriety*, No. 9:10-cv-1362, 2011 WL 1049510, at *2 (D.S.C. Mar. 21, 2011) (citing *Jackson*, 846 F.2d at 817).  The fact that a prisoner believed he had a more serious injury or that he required better treatment does not establish a constitutional violation.  *See, e.g.*, *Russell*, 528 F.2d at 319.

Assuming without deciding that Plaintiff can establish his medical need was sufficiently serious, he has failed to establish a genuine issue of material fact remains as to whether Defendants acted with a sufficiently culpable state of mind.  With respect to Defendants Chris Lloyd, George Amonitti, Ella L. Simmons, and Dr. Elkins (collectively, "the Ridgeland Medical Defendants"), Plaintiff argues that they should have been aware of the damage to his eye [Doc. 1-1 at 1]; however, he also states that he did not notice any change in his vision until after he arrived at Allendale [Doc. 1 at 6].[9]  Further, the record

---

[9]While Plaintiff clearly states in his Complaint that he did not notice any change in his vision before he arrived at Allendale, in his other pleadings Plaintiff appears to claim

demonstrates that Plaintiff was seen by the medical staff at Ridgeland after the 2012 attack [Docs. 1-4 at 5; 1-25 at 60–62], was transferred to the Coastal ER for further treatment [Docs. 1 at 5; 1-4 at 5; 1-25 at 23–25, 60–62], and was treated by the medical staff at Ridgeland until he was transferred to Allendale [Doc. 1-25 at 22, 35, 63–64]. Plaintiff has provided no evidence that the Ridgeland Medical Defendants knew or should have known that his eye was damaged in the attack or denied his adequate medical care, and, accordingly, summary judgment is appropriate with respect to these Defendants.[10]

Plaintiff's deliberate indifference to serious medical needs claim also fails against Defendants Thomas Byrne ("Dr. Byrne") and Pamela C. Derrick, (collectively, "the Allendale Medical Defendants"). Plaintiff asserts that treatment for his eye was unreasonably delayed and, as a result, he suffered permanent loss of vision in his left eye. [Doc. 1 at 3, 6.] As an initial matter, there is no evidence that the Allendale Medical Defendants had notice Plaintiff had injured his eye before he arrived at Allendale. As

_____

that he had experienced symptoms since the 2012 attack. [Docs. 1-18 at 1; 106 at 3.] To the extent that Plaintiff claims he was showing signs of a detached retina before he arrived at Allendale, there is no evidence that he informed the medical staffs at Ridgeland or Allendale before August 3, 2012, that he was experiencing symptoms. In his response in opposition to the motion for summary judgment, Plaintiff argues that it should have been obvious that he needed medical attention because his eye was badly swollen after the 2012 attack. [Doc. 1-1 at 1.] However, the evidence establishes that Plaintiff received medical attention after the 2012 attack and was seen by the medical staff at Ridgeland and at the Coastal ER. [Doc. 1-25 at 23–25, 60–63.]

[10]In his Complaint, Plaintiff alleges the medical defendants were negligent regarding his medical needs [Docs. 1 at 6; 1-1 at 1]; however, such a claim is not actionable under § 1983. *See Miltier,* 896 F. 2d at 851–52 (holding that, in order to sustain a cause of action for deliberate indifference to serious medical needs, the medical treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness" and "mere negligence or malpractice" does not violate the Constitution (internal citations omitted)).

previously discussed, Plaintiff admits that he was not aware of the injury to his eye until after he arrived at Allendale. [*Id.* at 6.] Additionally, the medical entry from the date he was transferred to Allendale reports that Plaintiff told the medical staff he did not have any medical or mental concerns. [Doc. 1-23.]

Further, the record shows that once Plaintiff informed the medical staff at Allendale that his vision was worsening, he received treatment.[11] In his affidavit, Dr. Byrne, a medical doctor at Allendale who treated Plaintiff, avers that Plaintiff was examined at least seven times between the time he arrived at Allendale and December 2012. [Doc. 102-8 ¶ 8.] He states that Plaintiff first mentioned trouble with his eye on August 3, 2012. [*Id.* ¶ 9.] Dr. Byrne contends that prisoners must get authorization from SCDC-Division of Health Services in Columbia, South Carolina before an eye appointment can be scheduled. [*Id.* ¶ 10.] Dr. Byrne avers that after Plaintiff informed him that his eye was injured, Dr. Byrne prepared the necessary paperwork for approval. [*Id.* ¶ 11.] Dr. Byrne states that after Plaintiff was given approval for an eye appointment, there was a three-month waiting period for an appointment. [*Id.* ¶ 12.] Dr. Byrne reports that Plaintiff was seen by an ophthalmologist on December 19, 2012, and by a retinal specialist on December 21, 2012; and he believes Plaintiff had successful surgery for his eye on February 6, 2013. [*Id.* ¶¶ 14–17.]

The evidence submitted by Plaintiff supports Dr. Byrne's affidavit. Plaintiff filed several grievances between October 2012 and January 2013, inquiring into when he would

---

[11]With respect to Plaintiff's claim that the treatment he received was antiquated in the context of prisoner medical care, the Constitution requires only that prisoners receive adequate medical care; a prisoner is not guaranteed his choice of treatment. *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988).

be scheduled for an appointment with an ophthalmologist and requesting treatment for his eye. [Docs. 17 at 3; 1-8 at 1–3, 5.] In their responses, prison officials consistently kept Plaintiff apprised of the situation and informed him that it could take three months or longer to schedule an appointment. [Docs. 1-7 at 3; 1-8 at 1, 4, 6.] The evidence suggests that the fact that Plaintiff had to wait before he could be seen by an outside physician was the result of scheduling procedures outside the control of the Allendale Medical Defendants. *See Motto v. Corr. Med. Servs., Inc.*, No. CIV.A. 5:06-0163, 2010 WL 3852373, at *1 (S.D.W. Va. Mar. 23, 2010) *report and recommendation adopted in part sub nom.* 2010 WL 3852387 (S.D.W. Va. Sept. 30, 2010) (finding that summary judgment was appropriate when a doctor averred that the wait  between the request for an appointment and the appointment was outside of his control). Plaintiff has failed to produce evidence that the Allendale Medical Defendants acted with the requisite culpable state of mind; accordingly, summary judgment is appropriate with respect to this claim.[12]

_____

[12]In his response in opposition to the motion for summary judgment, Plaintiff alleges that Defendants John Tomarching, the Department of Corrections medical director, and John Solomon, the Department of Corrections Director of Human Services, should have been aware that the medical defendants were deliberately indifferent to his serious medical needs because Plaintiff had written several grievances. [Doc. 106 at 2.] However, Plaintiff has failed to provide any evidence to support his conclusion or to allege that these Defendants had any personal involvement in his treatment. Because there is no doctrine of respondeat superior in § 1983 claims, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691–94 (1978), a defendant is liable in his individual capacity only for his personal wrongdoing or supervisory actions that violated constitutional norms, *see Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994) (setting forth elements necessary to establish supervisory liability under § 1983). A plaintiff must establish three elements to prevail under § 1983 on a theory of supervisory liability:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to

## CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends Defendants' motion for summary judgment be GRANTED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 1, 2015
Greenville, South Carolina

---

that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices[]"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Id.* (citations omitted); *see also Jones v. Corr. Care Solutions*, No. 0:09-cv-269, 2010 WL 2639788, at *2 (D.S.C. June 7, 2010) (noting that, under *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), supervisory liability may no longer be a viable § 1983 claim). To the extent that Plaintiff alleges these Defendants are liable in a supervisory capacity, Plaintiff has failed to establish any of the elements necessary to maintain this claim.